**SKINS TRADING CORPORATION,**
Libelant,

v.

**THE S/S PUNTA DEL ESTE,** her engines, tackle, apparel, etc., **The Republic of Uruguay, and Administracion Nacional de Puertos Del Uruguay,** Respondents.

United States District Court
S. D. New York.
Jan. 26, 1960.

Krisel, Beck & Taylor, New York City, for libelant.

Zock, Petrie, Sheneman & Reid, New York City, for respondent The S/S Punta Del Este, Administracion Nacional de Puertos Del Uruguay. James D. Hanlon, New York City, of counsel.

WEINFELD, District Judge.

Respondent, an agency of the Republic of Uruguay, filed an exceptive allegation to the libel on the ground that the bill of lading sued upon provides that any claim for loss of cargo or damage thereto must be filed with a court of competent jurisdiction in the City of Montevideo, Uruguay. In reliance upon this provision the respondent moves that the Court decline jurisdiction and dismiss the libel. The enforceability of the clause in question is a matter for the Court's discretion and turns upon its reasonableness viewed against the background of facts in each particular case.[1]

The libel centers about a shipment of 2,150 bales of rabbit pelt which were delivered to respondent for carriage from the port of Santos, Brazil to the port of New York, New York. There appears to be no question but that when delivered by the shipper the bales had

---

1. Wm. H. Muller & Co. v. Swedish American Line, Ltd., 2 Cir., 224 F.2d 806, 56 A.L.R.2d 295, certiorari denied 1955, 350 U.S. 903, 76 S.Ct. 182, 100 L.Ed. 793; Cerro De Pasco Copper Corp. v. Knut Knutsen, O.A.S., 2 Cir., 1951, 187 F.2d 990.

broken bands and the goods were insect infested. Nonetheless, the respondent issued a clean bill of lading upon receiving from the shipper an indemnity agreement which, among other matters, stated "the fact that the 'CLEAN' B/L has been issued shall not cause any harm to the shipowners."

Upon arrival of the shipment in New York the bill of lading was presented to the libelant's bank which paid the agreed price on behalf of libelant. The goods when delivered were in at least the same damaged condition as when received by the respondent.

The libelant filed its libel in rem and in personam for damage to the shipment. It asserts three causes of action: (1) breach of contract of carriage; (2) fraud in knowingly issuing a false bill of lading; (3) breach of respondent's duty under the Carriage of Goods by Sea Act to note the apparent order and condition of the goods.[2]

The respondent does not contest any of the essential facts as to the condition of the shipment when received by it. Indeed it could hardly do so since at the very time it issued the clean bill of lading it retained a separate copy, which, unlike the one issued, described the true damaged condition of the shipment.[3]

The respondent denies it issued a fraudulent bill of lading. It contends that the customary condition of rabbit pelts intended for the manufacture of glue is the very condition in which the pelts were upon delivery in New York and that the libelant received exactly what it had intended to purchase. It argues that under these circumstances the issuance of a clean bill of lading was "natural." This contention, as well as others advanced by respondent, is challenged by libelant which confirmed by letter its purchase of "500 short tons

Rabbit Pelt clean, free of any foreign material, free of bugs, packed in machine pressed bales."

The controverted questions, however, are to be resolved upon a trial. The basic issue before the Court on this motion is whether under the facts presented the clause in the bill of lading limiting jurisdiction to the courts of Montevideo should be given effect.

The respondent urges that the Court exercise a favorable discretion and dismiss the libel essentially upon the grounds of convenience of witnesses and accessibility of proof. It relies upon the fact that those "having knowledge of the actual condition of the cargo upon loading"—the shipper, the Brazilian government officials who inspected it and the stevedores who loaded it—are all located near the port of Santos, Brazil; that respondent, the owner of the vessel, is domiciled in Uruguay; and that the crew members of the S/S Punta Del Este reside in Uruguay. While it recognizes that witnesses at Santos, Brazil, the port of loading, will have to travel 800 miles to Montevideo, it points out that if the suit is retained in this Court these same witnesses will have to travel an additional 5,000 miles. Upon all these factors respondent concludes that Montevideo is the most convenient forum in which to try the issues and urges that the jurisdictional clause be enforced as reasonable.

The libelant, on the other hand, emphasizes first that as far as the shipment itself is concerned, there was no contact with Montevideo or Uruguay. It points out that the transaction was between an American citizen and a Brazilian shipper; that the loading took place in Brazil and the delivery in New York; further that there is no need to call witnesses to the condition of the cargo upon delivery at Santos since this is not seri-

---

2. 49 Stat. 1208 (1936), 46 U.S.C.A. § 1303 (3) (c). The parties appear to agree that the Act applies. See 49 Stat. 1207 (1936), 46 U.S.C.A. § 1300.

3. The notation is as follows: "Many bales received with broken ties. Cargo gives

appearance of insect infestation. Ship not responsible for condition in which cargo received. Any extra expense due to inherent vice or properties of cargo are for account of shippers and/or consignees."

ously disputed. The libelant next urges that respondent's vessel makes regular trips to New York and its officers and crew members are available to testify here; that witnesses on behalf of both respondent and libelant as to the nature and extent of damage, the condition of the goods upon arrival here, and their value, are all in and about New York City. Finally, the libelant strongly urges that since it was the respondent's alleged fraudulent conduct in knowingly issuing a false clean bill of lading that induced libelant to pay for the damaged shipment and led to this litigation, it would be unreasonable to enforce the jurisdictional clause and to relegate libelant to the jurisdiction of the respondent's own courts.

While we are not called upon to decide the major controversy, certain facts admit of no dispute, to wit, that respondent knew the goods were infested and the bales broken when it received them and that notwithstanding it executed a clean bill of lading upon the shipper's agreement to indemnify it. Such and similar conduct has been held by our courts to raise an estoppel against the actor so that he is precluded upon the trial from asserting that the goods were not in apparent good order and condition when he received them.[4] Indeed, some of the cases have even held that the carrier, because of its conduct, was precluded from relying on certain exceptions in the bill of lading.[5]

■ Upon all the facts the Court concludes that to give effect to the clause in the bill of lading limiting jurisdiction to the courts of Montevideo and to remit the libelant to that forum for the vindi-

cation of its rights would be unreasonable. In the exercise of discretion the respondent's exceptive allegation is therefore overruled.

Settle order on notice.

---

4. Higgins v. Anglo-Algerian S.S. Co., 2 Cir., 1918, 248 F. 386; Olivier Straw Goods Corp. v. Osaka Shosen Kaisha, 2 Cir., 27 F.2d 129, 133, certiorari denied 1928, 278 U.S. 618, 49 S.Ct. 22, 73 L.Ed. 540; Continex, Inc. v. The Flying Independent, D.C.S.D.N.Y.1952, 106 F.Supp. 319; The Carso, D.C.S.D.N.Y.1930, 43 F. 2d 736, affirmed in part, reversed in part, 2 Cir., 53 F.2d 374, certiorari denied 1931, 284 U.S. 679, 52 S.Ct. 140, 76 L. Ed. 574. See also Austin Nichols & Co.

v. The Isla De Panay, 1925, 267 U.S. 260, 45 S.Ct. 269, 69 L.Ed. 603.

5. E. g., Olivier Straw Goods Corp. v. Osaka Shosen Kaisha, 2 Cir., 27 F.2d 129, 133, certiorari denied 1928, 278 U.S. 618, 49 S.Ct. 22, 73 L.Ed. 540; The Carso, 2 Cir., 53 F.2d 374, 379, certiorari denied 1931, 284 U.S. 679, 52 S.Ct. 140, 76 L. Ed. 574; Continex, Inc. v. The Flying Independent, D.C.S.D.N.Y.1952, 106 F. Supp. 319.